IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONA MARIE HARROLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-616-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, Dona Marie Harrold ("Harrold"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a

disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Background**

Harrold was forty years old on the alleged date of onset of disability and forty-four on the date of the Commissioner's final decision. [R. 1, R. 252 (Ex. 1D)]. She has a high school education and one year of college. [R.107]. She has previous experience as a build specialist at a pipeline manufacturing company, convenience store manager, master inspector at a television station and salesperson at a radio station. [R. 282 (Ex. 2E)]. In her application, she claimed to be unable to work as a result of severe migraines, bipolar disorder, anxiety, lower back problems and fibromyalgia. [R. 281(Ex. 2E)].

**The ALJ's Decision**

In his decision, the ALJ found that Harrold met the insured status requirements of the Social Security Act through June 30, 2016, and, at Step One, that she had not engaged in any substantial gainful activity since June 11, 2012, the alleged onset date. [R. 89]. He found at Step Two that Harrold had severe impairments of bipolar I disorder, mixed with psychotic features; panic disorder with agoraphobia; mild degenerative changes of both knees; C4-C5 disc bilobed herniation with cord contact; mild degenerative cervical changes; and mild to moderate diffuse degenerative changes to the thoracic spine. *Id.* At Step Three, he found that the impairments did not meet or medically equal any listing. [R. 90]. He concluded that Harrold the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform "light" and "sedentary" work as defined in 20 CFR 404.1567(b) and 416.967(b). She could occasionally lift and/or carry up to 20 pounds and could frequently lift and/or carry up to 10 pounds. She could stand and/or walk for up to six hours in an eight-hour workday. She could sit for up to six hours in an eight-hour workday. She could use her hands for hand controls and her feet for foot controls. She has no postural limitation and no vision limits. She has no environmental limitations. She could understand, remember and carry out simple tasks. She could relate to others on a superficial work basis. She could adapt appropriately to a work situation. She could not work with the general public. She has mild to moderate to occasional chronic pain of sufficient severity so as to be noticeable,

> yet is able to remain attentive and responsive in a work setting. She takes medications but is able to remain reasonably alert to perform required functions in the work setting.

[R. 91].

At Step Four, the ALJ determined that Harrold was unable to perform any past relevant work. [R. 94]. At Step Five, he found that, considering Harrold's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, including *laundry sorter*, light unskilled work with an SVP of 2, DOT #361.687-014, with 12,000 such jobs in Region 6 and 177,000 such jobs in the national economy; *mail room clerk*, light unskilled work with an SVP of 2, DOT #209.687-026, with 16,000 such jobs in Region 6 and 205,000 such jobs in the national economy; *assembler*, light unskilled work with an SVP of 2, DOT #706.684-022, with 13,000 such jobs in Region 6 and 180,000 such jobs in the national economy; *clerical mailer*, sedentary unskilled work with an SVP of 2, DOT #209.587-010, with 10,500 such jobs in Region 6 and 125,000 such jobs in the national economy; *assembler*, sedentary unskilled work with an SVP of 2, DOT #726.685-066, with 7,000 such jobs in Region 6 and 93,000 such jobs in the national economy; and *surveillance monitor*, sedentary unskilled work with an SVP of 2, DOT #379.367-010, with 4,000 such jobs in Region 6 and 72,000 such jobs in the national economy. [R. 95].

Accordingly, the ALJ found that Harrold had not been under a disability from June 11, 2012, through the date of the decision. [R. 96].

## Plaintiff's Allegations

On appeal, Harrold asserts that the ALJ failed to properly consider (1) the medical source opinions; (2) plaintiff's credibility; and (3) the entire record.

4

## Analysis

### 1. Medical Source Opinions

Harrold asserts the ALJ improperly rejected the opinion of Robert Blasdel, a counselor at Grand Lake Mental Health Center ("GLMH"). Blasdel completed and signed a Medical Source Opinion dated January 13, 2014. [R. 619-620 (Ex. 8F)]. The statement was also signed by John Mallgren, D.O., but Harrold concedes Dr. Mallgren never treated her. [Dkt.#14 at 5]. Blasdel opined that Harrold would not be able to perform fifty percent of the time or more in all aspects related to attention and concentration[2] and in three out of four aspects of social interaction.[3]

The ALJ gave the form "little or no weight." [R. 94]. In support of this conclusion, he observed that (1) the terms and definitions on the attorney-provided form did not comport with the criteria set out in 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); (2) the form assigned numerical percentages to define severity, but such definitional percentages are not found in the regulations; (3) the form was "not calculated to produce a fair assessment from the source;" (4) "It is unclear who completed the form but it appears a counselor rather than a treating physician completed the form;" (5) "[t]he physician who signed the form has never treated claimant;" and (6) the form "is not supported by the treatment notes of [GLMH]." [R. 93-94].

The reasons listed by the ALJ are all legally-permissible bases for rejecting the Medical Source Opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(2), (4), (6) (listing factors that are considered in

---

[2] These aspects were the ability to maintain attention and concentration for extended periods in order to perform simple tasks; the ability to maintain attention and concentration for extended periods in order to perform detailed tasks; the ability to adhere to a schedule and maintain regular attendance; the ability to work close to others without being distracted; the ability to perform at a consistent pace without an unreasonable number or length of rest periods; and the ability to handle normal work stress. [R. 619 (Ex. 8F)].

[3] These aspects were the ability to interact appropriately with the public; the ability to accept instructions and criticism from supervisors; the ability to work with others without causing distractions; and the ability to maintain socially appropriate behavior and basic standards of neatness and cleanliness. [R. 620 (Ex. 8F)].

weighing medical opinions, including the examining and treatment relationship, the consistency of the opinion with the record as a whole, and the extent to which an acceptable medical source is familiar with information in the claimant's case record); SSR 06-3p, 2006 WL 2329939, at *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (in the case of a nonacceptable medical source, the ALJ's decision is sufficient if it "permits us to 'follow the adjudicator's reasoning.'" (citing SSR 06-03p, 2006 WL 2329939, at *6); ( 20 C.F.R. § 404.1227(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (ALJ properly gave no weight to a conclusory form which lacked any functional findings); *Bainbridge v. Colvin*, 618 Fed. Appx. 384, 390 (10th Cir. 2015) (unpublished) (ALJ reasonably concluded treating physician's own medical records did not support his opinion that plaintiff was disabled).

Harrold also contends the ALJ failed to assign a weight to the report of consultative examiner Denise LaGrand, Psy.D., or to address the consultant's statement that while plaintiff's ability to attend and process low-level tasks was adequate, "she is unlikely at this time to be able to work without significant interference from psychological symptoms, primarily anxiety." [R. 569 (Ex. 5F)].  However, the RFC formulated by the ALJ—i.e., that plaintiff could understand, remember, and carry out simple tasks, relate to others on a superficial work basis, and adapt appropriately to a work situation, but could not work with the general public—is consistent with Dr. LaGrand's findings, and adequately addresses the potential for interference from

psychological symptoms. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012) (any error in failing to specify the weight given psychologist's opinion was harmless where specific limitations he assigned were not inconsistent with the limitations the ALJ placed in plaintiff's RFC).

Next, Harrold complains that the ALJ failed to discuss the state agency consulting psychologists' opinions. She concedes, though, that the state psychologists' MRFC conclusions were consistent with the RFC formulated by the ALJ. [R. 139 (Ex. 3A); R. 170 (Ex. 7A)]. Accordingly, the ALJ's failure to discuss the state agency opinions is harmless error. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity).

Finally, she contends the state agency psychologist's statement that "claimant remains mentally capable of understanding and carrying out instructions and assignments in a *structured setting*, in an appropriate time frame" means she is only capable of working in "sheltered employment." [Dkt. #14 at 7] (emphasis added). But she admits that "[s]heltered employment is employment provided for handicapped individuals in a protected environment under an institutional program." *Id.* SSR 83-33, 1983 WL 31255, at *7. Harrold is not a handicapped individual. Moreover, the psychologist's reference to a "structured setting" was adequately addressed by the MRFC, which restricted her to "simple and some complex tasks" and relating to others only on a superficial basis.

## 2. Credibility Analysis

The ALJ concluded that Harrold's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but "the claimant's statements concerning the

7

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [R. 92].

Harrold contends the only specific reason the ALJ gave in support of his credibility assessment was that she had extended periods of time without any medical care. [Dkt. #14 at 8]. However, the ALJ also found that the claimant's testimony regarding her impairments was out of proportion to the objective medical evidence; that it was inconsistent with the record as a whole; and that while she might experience some degree of pain or discomfort at times of heavy overexertion, even moderate levels of pain are not, in and of itself, incompatible with the performance of certain levels of sustained work activity. [R. 93-94].

The ALJ's discussed, *inter alia*, the following evidence supporting his assessment:

- Consulting physician Ashley Gourd, M.D., who examined Harrold on May 17, 2013, found she had no respiratory wheezes, rhonchi or rales; her heart rate and rhythm was regular; she moved all extremities well; she was able to pick up and manipulate small objects without difficulty; and fine tactile manipulation of objects was normal. She had decreased range of motion of lumbar and cervical spine and positive tenderness and spasm in the lower lumbar was noted. Strength was graded at 4/5 in all extremities; neurological findings were normal; gait was stable and steady without use of assistive devices, just at a slow speed. She was able to rise from a seated position without difficulty. Dr. Gourd assessed Harrold as having chronic neck and low back pain with decreased ROM and pain in cervical and lumbar spine and observed that she moved above stiffly but independently. Harrold was on multiple medications for management of her symptoms but stated breakthrough pain is present. [R. 93, R. 573-574 (Ex. 6F)].

- Harrold presented at the Jane Phillips emergency room on January 3, 2014, complaining of chest pain. Examination revealed normal range of motion, normal strength, no tenderness and no deformity. Harrold had no abnormal cardiovascular findings and was released to home with a diagnosis of musculoskeletal chest pain and GERD. [R. 93, r. 636 (Ex. 11F)].

- MRI of Harrold' cervical spine dated March 18, 2014, revealed impression of C4-C5 disc bilobed herniation with cord intact; MRI of the cervical spine revealed impression of mild degenerative changes; X-ray of the thoracic spine revealed mild to moderate diffuse degenerative changes to the thoracic spine. [R. 93, R. 709-710 (Ex. 13F), R. 717 (Ex. 14F)].

- On follow up visit to her cardiologist, Harrold reported some dizziness but indicated she had been doing better on current medications of Lopressor and Enalipril. [R. 93, R. 790 (Ex. 16F)].

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed the portions of the records he believed contradict Harrold's subjective statements, thus satisfying his duty to support her credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).

The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner." *Hamlin,* 365 F.3d at 1214 (quotation omitted).   .

### 3.  Consideration of Record

Harrold contends the ALJ ignored most of the evidence relating to her mental impairments. However, the ALJ stated that he considered the entire record [R. 91]. The court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Moreover, the ALJ is not required to "discuss every piece of evidence." *Wall*, 561 F.3d at 1067 (citing *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). "On the contrary, [the court] will generally find the ALJ's decision adequate if it discusses the 'uncontroverted evidence' the ALJ chooses to rely upon and any 'significantly probative evidence' the ALJ decides to reject." *Id.*

In his decision, the ALJ acknowledged generally that Harrold received medication management and therapy sessions at GLMH and—as previously noted—discussed at length the Medical Source Opinion signed by Dr. Mallgren and Mr. Blasdel. [R. 93-94]. His observations that Dr. Mallgren had never treated Harrold and that the form was not supported by the treatment notes from GLMH further support his statement that he had considered the entire record. [R. 94]. Therefore, the Court rejects Harrold's argument that the ALJ failed to consider most of the evidence relating to her mental impairments.

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Harrold is not disabled is hereby **AFFIRMED**.

ENTERED this 16th day of February, 2017.

_____
Paul J. Cleary
United States Magistrate Judge